Gholson, J.
The first point made by the counsel for the *461 plaintiffs in error, is, that Swan creek is a navigable stream, the bank of which the board of public works had no power to appropriate for the purpose of a towpath. Their power, it is argued, was limited to the construction of a canal, and á towpath could only be constructed on the bank of the canal. Swan creek being no part of the canal, the conclusion is drawn, that its bank could not be appropriated for a towpath.
The act of 3d March, 1834 (32 O. L. 306), shows the object in view in the construction of the Wabash and Erie canal. It was “ to connect the waters of the Wabash river with those of' Lake Erie,” and the commissioners were “ to proceed to locate and establish the line of said Wabash and Erie canal from the east line of the state of Indiana, to some suitable point for the termination of the same, below the rapids of the Miami river of the Lake.” In carrying out this object and making the proposed improvement, the commissioners were authorized, under the act of 4th February, 1825 (2 Chase, 1475), “to enter upon and take possession of, and use all and singular any lands, waters, streams, and materials necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams, and other works and devices as they may think proper for making said improvements, doing, nevertheless, no unnecessary damage.”
The navigation of boats from the waters of the Wabash to those of the Miami of the Lake, or the Maumee, below its rapids, was the real object in view. The powers conferred were intended to accomplish that object. We do not understand, that it is claimed, that there was an excess of power in constructing a main canal to Manhattan, on the Maumee, and a side-cut into Swan creek. Looking at the general nature of the power and the wide discretion vested in those by whom it was to be exercised, the furnishing two modes of access to the waters of the Maumee, could hardly be regarded as objectionable. The legality could not now be questioned by any one, and least of all, should those interested in Toledo complain.
The object being the navigation of boats from the waters *462 of the Wabash to those of the Maumee, and, in the carrying out that object, a side-cut having been made into Swan creek, could the bank of that stream be appropriated in aid of and for the purpose of the navigation, so as to reach the waters of the Maumee ?
We think it would be an exceedingly strict limitation of the powers conferred, to hold, that such a stream as Swan creek is shown to be, and such a device as a towpath along its bank, may not be used as appropriate means to accomplish the end in view, the navigation of boats from the waters of the Wabash to those of the Maumee. We do not think we are required to overlook the great object of the improvement, and confine ourselves to a consideration of the meaning of the word “ canal.” It seems to be admitted, that a natural watercourse may be so changed by art, as properly to become a part of a canal, and we see no reason to doubt, that, in view of the object to be attained, power was conferred to use and appropriate a navigable stream, without other alteration than connecting with it the waters flowing from the canal. The use, in the present case, is shown not to exclude other modes of navigation, and we can perceive no principle upon which the interest which those under whom the defendants claim had in the bank of Swan creek, was exempt from appropriation by the state. They were entitled, had* it been claimed in the manner and within the time prescribed by law, to compensation for any proprietary interest they had in the bank of the stream. ' Such a proprietary interest in the banks of navigable streams, has been recognized, and is frequently a source of profit, but it is subject to appropriation for public use.
The extent to which the banks of a navigable stream may be appropriated, to the interruption of their use by those navigating the stream, is a question of degree, depending on the character of the stream and of the navigation. But that they may be so appropriated for public use, there is no doubt, otherwise, there would be no authority to construct a bridge across a navigable stream, involving, as it generally must, the exclusive use of a portion of the banks. So a particular mode *463 of navigation, as in this case, by requiring the use of one of the banks for a towpath, may, to some extent, interfere with the landing of vessels, but it by no means follows, that such interference gives any just ground of complaint to those engaged in commerce and navigation. On the contrary, we think that the finding and the evidence show, that benefit and profit to all concerned have,.so far, resulted. If, in the future, the increase of commerce and navigation shall require the substitution of steam-tugs for a towpath and horses, it will, in all probability, be the interest' of those controlling the navigation of the canal, to make the change ;mnd we can not but think, that any fears as to the injurious effects, which the appropriation of the bank of Swa,n creek for a towpath, may have on the growth and prosperity of Toledo, as a point for commercial exchanges, will prove to be groundless.
The remarks which have been made really dispose of two other objections made to the finding and judgment of the court of common pleas. The objection that the commissioners exhausted their power, when they reported to the legislature, in 1838, that they had made the final location of the Wabash and Erie canal; that it terminated at the Maumee river at Manhattan, and had a side-cut at Toledo, forty-seven chains in length. To maintain the objection, it must be assumed that the “side-cut at Toledo, forty-seven chains in length,” is the description of a termination of the navigation of the boats, and did not involve the use of the bank of Swan creek to enable the boats to reach the waters of the Maumee, which, as found by the court and shown by the evidence, was the real purpose of the side-cut. Waiving the question as to the authority óf the commissioners to denude themselves of the power to complete an important work of internal improvement, according to the object and intent of the law, by an indefinite report to the legislature, we are satisfied that there is nothing in that report, nor in the location to which-it refers, inconsistent with the appropriation then contemplated, and afterward made, of the bank of Swan creek.
A further objection is made to the finding and judgment of the court of common pleas, on the ground that, contrary to- *464 that finding, the appropriation of the bank of Swan creek ■did “ unnecessary damage ” to its proprietors. That expression in the act has reference rather to the mode and manner of the appropriation of property than the question whether the particular property was subject to appropriation. Where property, from its character and location, may be used for the purpose of a contemplated public improvement, as to the necessity and propriety of its use, those having the work in charge must have a wide descretion; and to authorize a court to interfere, a very clear abuse of that discretion would have to be shown. And when the power to appropriate exists, the interference of a court, to prevent an abuse in its exercise, should be invoked before the appropriation is made, or at least before the projected improvement is constructed. An improper exercise of discretion in the act of appropriation could rarely be a subject of inquiry in a suit involving a question of title to the property.
If there was power to appropriate the bank of Swan creek, then, in the act of appropriation, the question of unnecessary damage might have arisen and have been presented. For example, to construct a towpath along the bank, it might not have been necessary to destroy forests of timber or houses on the adjoining land. But Avhen, in the construction of the canal, or in its adaptation to the purposes of navigation, it was open to those having the improvement in charge, to adopt one of two devices, the idea that a court may determine that the device adopted was not the proper one, and having involved in its adoption an appropriation of private property, such appropriation was, therefore, unauthorized, can not, we think, be maintained.
During'the progress of the hearing of the case in the court of common pleas, an exception was taken upon a point as to the reception of evidence. The defendants claimed that parol evidence of an appropriation should not be received, and that the plaintiff should be required to produce record evidence, showing the appropriation. Upon this point we are referred to the case of The State v. Baum, 6 Ohio Rep. 157. But that case is distinguishable from the present. There, it *465 was sought to bind Baum by a contract to sell his land to the canal commissioners. There had been no act of appropriation. The statute of frauds was held to require the evidence of that contract to be in writing, and from the operation of that statute the agents of the state were held not to be exempt. But we have been shown no statute which requires an act of the canal commissioners,- or the board of public works, appropriating land for the construction of the canals, to be evidenced by writing, either before or after the act of appropriation becomes consummate and complete by possession and construction. The terms of the act authorizing appropriation are very general: “ It shall and may be lawful for the said canal commissioners, and each of them by themselves, and by any and every superintendent, agent, and engineer, employed by them, to enter upon, and take possession of, and use all and singular, any lands, waters, streams and materials, necessary for the prosecution of the improvements intended by this act (2 Chase, 1475). When damages were claimed, the act provided for the appointment of appraisers, and these appraisers were to make entries in books kept for that purpose, which were to contain an apt and sufficient description of the premises appropriated. But no provision is made as to any writing, or record, where land is entered upon and appropriated, and no claim for compensation is made, and we do not feel at liberty, from analogy to the case of private contracts or titles, to interpolate any such condition or restriction on the power expressly conferred by the statute.
A point has been suggested by the counsel for the plaintiff in error, as to the conflict in the appropriation of the bank of Swan creek, with the ordinance of 1787, and with the act of congress, making Toledo a port of entry. This point he does not argue, but intimates that it may be discussed in the supreme court of the United States, should this case ever get there. It not having been pointed out to us, we are not able to see how the Wabash and Erie canal, including the improvement and use of the bank of Swan creek, as found by the court, and shown in the evidence, violates the ordinance of 1787, or any act of congress. This state has ever maintained *466 the right to improve the navigable streams within her limits, and when any act done, under the authority of the general assembly, in reference to a navigable stream, is shown to be an improper interference with navigation and commerce, it will be time enough to enter upon an inquiry as to the power to authorize the act.
We find no error in the judgment of the court of common pleas, and it will be affirmed.
Judgment affirmed.
Sutliee, C.J., and Peck, Brinkerhoee and Scott, J J., concurred.